HOFMANN & SCHWEITZER
Attorneys for Plaintiff
360 West 31st Street, Suite 1506
New York, NY 10001-2727
Tel: 212-465-8840

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CIRO CHARLES HICKS,

                Plaintiff

    -against-

VANE LINE BUNKERING, INC.,
and the TUG PATRIOT, In Rem,

                Defendants,

------------------------------------------------------------x

**JOINT PRE-TRIAL ORDER**

11 Civ. 8158 (KBF)

    The following constitutes the joint pre-trial order in this matter.

I.     PARTIES AND ATTORNEYS

    Plaintiff:     Ciro Charles Hicks
    Counsel:    Paul T. Hofmann, Esq.
                Hofmann & Schweitzer
                360 W. 31st Street
                New York, New York 10001
                212-465-8840 Fax: 212-465-8849
                paulhofmann@hofmannlawfirm.com

    Defendant:  Vane Line Bunkering, Inc.
    Counsel:    James Forde, Esq.
                Boriana Farrar, Esq.
                Hill Betts & Nash
                One World Financial Center
                200 Liberty Street, 26th Floor
                New York, New York 10281
                (212) 839-7000     Fax (212) 466-0514
                jforde@hillbetts.com

II.    SUBJECT MATTER JURISDICTION:

    This is a seaman's personal injury action brought pursuant to the Jones Act, 46 USC §

30104 et seq. and general maritime law.

Defendant does not contest subject matter jurisdiction

III.    SUMMARY OF RESPECTIVE PARTIES CLAIMS/DEFENSES:

BY PLAINTIFF:

The within matter is a claim for damages resulting from injury to plaintiff, (Ciro) Charles Hicks, who was employed as a mate on the tugboat PATRIOT, owned and operated by defendant Vane Line Bunkering.  Plaintiff suffered injuries to his right shoulder on April 21, 2009 while the tugboat was operating in and about the Chesapeake Bay.  His injury occurred when he was pushing upon a heavy, 200 lb. steel "donut", a rolling sheave which is affixed to a towing bar, known as a Texas bar, which is a steel bar that crosses from port to starboard at the stern of the tugboat, and over which the towing wire, used to tow barges, rides.  Plaintiff asserts that although pushing the 'donut' into place for the towing wire to safely ride on the Texas bar is a two-man job, his boss, the vessel's captain, had him do the job by himself, and further, that subordinates and co-workers who should have assisted him do the work refused to do so.

As a result, plaintiff suffered a torn rotator cuff and labrum in his right shoulder that was surgically repaired, but which has had a recurrent tear, all of which has disabled him in whole or in part from April 22, 2009 to the present, and will disable him into the future for about 8 months while he proceeds through the trial, has arrangements made for surgery and has his shoulder undergo further arthroscopic surgery.

As a result of his the negligence of the defendant and the unseaworthiness of the vessel, plaintiff has suffered significant loss of earnings (wages and benefits) over the past three and a quarter years (as of the time of trial) and furthermore, approximately 8 months into the future from that point as he has necessary surgery to repair recurrent tears.

Plaintiff claims, further, that he never reached maximum medical improvement in his

shoulder, that he needs further reconstructive surgery, and that the defendant was callous, willful and wanton in refusing his requests for further care and maintenance and cure. This entitles Mr. Hicks to compensatory damages, attorney's fees, costs and punitive damages.

Plaintiff claims defendant underpaid him maintenance by arbitrarily determining to pay $15/day in violation of the general maritime law duty to pay maintenance at the reasonable actual costs of food and lodging, except in the situation where there is a collective bargaining agreement covering the seafarer's employment which can set an arbitrary, but collectively bargained, rate. Mr. Hicks's employment was not covered by a collective bargaining agreement. Plaintiff asserts a claim for the difference between what defendant paid in maintenance and the actual reasonable costs for food and lodging. Plaintiff seeks compensatory damages for the damages he suffered due to the delay in providing him with maintenance and cure. Plaintiff seeks compensation for the attorneys' fees and costs he has incurred in bringing the maintenance and cure claim to trial as well as punitive damages, as aforesaid.

Plaintiff's treating surgeon was requesting permission to do an MRI to determine if further revision surgery was necessary when defendants surreptitiously filmed plaintiff doing some gardening, and defendant used that as an excuse to claim plaintiff was at an end point of his treatment, and thus, defendant terminated maintenance and cure benefits. That the surveillance video does not rebut Mr. Hicks's claim of entitlement to further maintenance and cure has been established by a current orthopedic treating surgeon.

Plaintiff claims lost wages and benefits in the past and for a period into the future during which he will eventually have the surgery he needs.

Further, he has in the past and in the future will endure serious pain and suffering for which he seeks compensation.

Final PTO final draft.DOC

BY DEFENDANT:

Defendant contends that Plaintiff, if his story is true, should never have been where he was at the time of the accident. Specifically, at the time of the accident the tug PATRIOT was towing a barge in the Chesapeake Bay area. It is both common sense and well known in the industry that when a tow is on the line no personnel should be no further aft on the vessel than the tow winch. The reason being that the tow wire out could shift at any time and could cause serious injury or death.

Defendants contend that there were no witnesses to the accident. The captain never ordered the mate Mr. Hicks aft to move the 200 pound doughnut. In fact the only time that the doughnut is manually moved is in port when there is no tow and you either are greasing the Texas bar or painting the doughnut. In fact, it is common for the tow line to be not in the doughnut while towing in close quarters such as the Chesapeake Bay.

Further, Plaintiff's injuries however caused were treated by Dr. Lisser a renowned orthopedic surgeon. Subsequent to his treatment Mr. Hicks eventually did not attend his physical therapy sessions and in spite of this, was caught on tape and by a witness to be performing heavy manual labor which more than likely caused him to injure his shoulder thus causing the additional surgeries.

IV.    JURY TRIAL - 2 FULL DAYS ARE EXPECTED

V.     THE PARTIES HAVE NOT CONSENTED TO A TRIAL BEFORE A MAGISTRATE
       JUDGE

VI.    STIPULATIONS OF FACT

1.     Charles Hicks was a Mate employed by Vane Line Bunkering from 9/8/08 through
       7/24/09. (Source: Personnel file status document).

2. As of November 18, 2008, Mr. Hicks was released from his training period for Vane Line Bunkering, and found to be qualified to work as a mate on any Vane Line Class 3 tug or lower. (Source: Email, 11/18/08 from Captain Dennis Kozu to Rhonda Shaffer).

3. As of November 24, 2008, Mr. Hicks was promoted to permanent mate on the Tug Patriot. (Source: Email, 11/24/08 from Captain Dennis Kozu to Rhonda Shaffer).

4. Between 1/1/09 and 4/22/09 Mr. Hicks earned $28,175 in wages while working for Vane Line Bunkering.

5. Mr. Hicks's base earnings at the time of his injury were $5301.80/month. (Source LTD Claim Information Supplied by Employer, by Judith Robbins, Benefits Coordinator, document dated 8/26/09)

6. Mr. Hicks's work periods were 14 days on and 14 days off. (Source LTD Claim Information Supplied by Employer, by Judith Robbins, Benefits Coordinator, document dated 8/26/09)

7. Mr. Hicks's annual base salary was $69,923/year. (Source LTD Claim Information Supplied by Employer, by Judith Robbins, Benefits Coordinator, document dated 8/26/09)

8. Mr. Hicks's daily wage rate was $378.70/day, for working 12 hours per day. (Source LTD Claim Information Supplied by Employer, by Judith Robbins, Benefits Coordinator, document dated 8/26/09)

9. Mr. Hicks worked hours and days in addition to his 12 hour watches and 14 day hitches at the request of his employer during his entire period of employment, from September 2008 through April 2009, for which he received extra compensation.

10. A fringe benefit in place to Vane Line employees was a Long Term Disability ("LTD")

plan, administered by Mutual of Omaha, the premiums for which were paid 100% by the employee.

11. 100% of the premium for the LTD policy was paid for by Mr. Hicks through wage deductions. (Source LTD Claim Information Supplied by Employer, by Judith Robbins, Benefits Coordinator, document dated 8/26/09).

12. Mr. Hicks was eligible for and was a participant in the Vane Line Bunkering pension plan. (Source LTD Claim Information Supplied by Employer, by Judith Robbins, Benefits Coordinator, document dated 8/26/09).

13. Mr. Hicks participated in the Vane Line Bunkering medical plan through Blue Cross/ Blue Shield. He opted for and was covered by Employee and Spouse Coverage for Dental, Vision and Medical Care. (Source: Employee Election Form, signed by Vane Line on 10/1/08).

14. Every 2 weeks, Vane Line Bunkering contributed a 25% matching contribution on behalf of plaintiff to the Vane Line Bunkering 401K plan. (Source: Hicks pay stubs).

15. Every 2 weeks, Mr. Hicks contributed on average approximately $110 to the 401K plan, thus, in each 2 week period Vane contributed approximately $27.50.

16. On an annualized basis, Vane's contribution to Mr. Hick's 401K program would be approximately $650. (Source: Hicks pay stubs)

17. Vane Line Bunkering, Inc., on account of Mr. Hicks's injury in April 2009, paid Mr. Hicks $15/day for maintenance. (Source: William Neubrand letter, May 18, 2009).

18. Vane Line Bunkering, Inc. did not have a collective bargaining agreement with any union that covered Mr. Hicks's employment.

19. Vane Line Bunkering, Inc. never inquired what were the actual costs for food and lodging

being incurred by Mr. Hicks during the period from April 22, 2009 through present.

20.     Trial Exhibit "38" is a true and correct copy of the billing records from Dr. Steven Lisser, and his practice group, Orthopedic Sports Medicine and Rehabilitation for the period from June 25, 2009 through June 28, 2010.

21.     Vane Line Bunkering, or some other entity on its behalf, paid the charges listed as paid in Trial Exhibit "38".

22.     The total surgeon's fees charged by Dr. Lisser for his surgical services on July 1, 2009 were $75,400 which was paid by, or on behalf of Vane Line Bunkering, Inc.

23.     Trial Exhibit "35" is a true and correct copy of the bill for hospital charges for the surgery performed on Mr. Hicks on July 1, 2009 at Riverview Medical Center in the amount of $23,172.

24.     Vane Line Bunkering paid the charges listed in Trial Exhibit "35".

25.     The total hospital fees charged by Riverview Medical Center for Mr. Hicks's surgery on July 1, 2009 were $23,172 which were paid by, or on behalf of Vane Line Bunkering, Inc.

VII.    WITNESSES:

    A.      FOR PLAINTIFF

        1.      Plaintiff, testimony will be live (2 hours direct, 1hour cross)

        2.      Dr. Charles Rizzo, testimony will be by videotaped deposition (1 hour direct and cross and re-direct)

        3.      Vincent Lusardi, testimony by videotaped deposition (1 hour, direct and cross)

        4.      Glenn Scoggins, testimony by deposition (plaintiff's designations about 15

minutes)

       5.    Mark Johnson, Tugboat Engineer, testimony by deposition (plaintiff's designations, about 15 minutes)

       6.    Bruce Comiskey, Tugboat Captain, testimony by deposition (plaintiff's designations about 15 minutes)

       7.    Janet Hicks, live (about 20 minutes)

   B.    FOR DEFENDANT

       1.    Andrew Mark Johnson – by Deposition (approximately ½ hour)

       2.    Bruce Comiskey – Live (approximately 1 hour; cross ½ hour)

       3.    Glen Scroggins – by Deposition (approximately ½ hour)

       4.    Robert Roosevelt – by Deposition (approximately ½ hour)

       5.    Rich DiNapoli – Live Expert on proper tug boat operations (approximately 1 hour, cross about ½ hour)

       6.    Dr. Lisser – Live – treating physician (approximately 1 hour, cross approx. 45 minutes)

       7.    Bill Neubrand – Live – Vane Corporate representative (1 hour, cross approx. ½ hour)

       8.    Marc M. Swan – Live – Private Investigator (1 hour). Plaintiff objects to this previously unidentified witness.

       9.    Vincent Lusardi – Live – (1 hour, cross about 10 minutes). Further, plaintiff will call Mr. Lusardi on direct case if he is produced by Vane

VIII.   DEPOSITION DESIGNATIONS

   A.    FOR PLAINTIFF

   Dr. Charles Rizzo Deposition Designations:

Plaintiff will play the entire direct, cross and re-direct

<u>Vincent Lusardi Deposition Designations</u>:

Plaintiff will play the entire direct, cross and re-direct

<u>Glenn Scroggins Deposition Designations</u>:

P4 L2-4

P6 L8-22

P11 L21 - P19 L19

P21 L15 - 24

P22 L11 - P23 L12

P27 L17 - P34 L8

P42 L11 - P50 L7

P52 L6-13

       Defendant objects to pg 52, lines 10-13 as to form.

<u>Mark Johnson Deposition Designations</u>:

P4 L11 - P7 L4

P8 L18-P11 L22

P18 L22 - P21 L5

P21 L15-19

P23 L6 - P30 L9

       Defendant objects to Ex. 3 being introduced.

P32 L4-21

P36 L11 - P40 L3

P44 L3-16

       Defendant objects to this question as to form, misleading.

Final PTO final draft DOC

Bruce Comiskey Deposition Designations:

P3 L2-13

P8 L19-21

P13 L15-22

P16 L24 - P21 L25

P24 L10 - P25 L18

P30 L3 - P31 L4

P35 L18 - P36 - L20

P40 L18 - P41 L11

P41 L22-23

P42 L5- P44 L6

P48 L13 - P49 L2

P43 L20

P78 L25 - P79 L7

P87 L6 - P90 L25

IF DEFENDANT READS HIS DEPOSITION AND DOES NOT PRESENT HIM LIVE, THEN

PLAINTIFF WILL ALSO HAVE INCLUDED:

P62 L10-14
P62 L19- P63-L6
P64 L17 – P74 L6
P75 L3-24

      B.     FOR DEFENDANT[1]

| **Witness:  Vincent Lusardi** |
| :d Deposition Page/Line Designations** |

---

[1]   See attached deposition transcripts.

| PAGE | LINE NOS. |
|------|-----------|
| 23 | 20-25 |
| 24 | 1, 11-17 |
| 25 | 8-10 |
| 26 | 18-25 |
| 27 | 1-5 |
| 28 | 15-20, 24-25 |
| 29 | 1-23 |
| 30 | 6-7, 9-24 |
| 31 | 12-21 |
| 38 | 8-10, 12-25 |
| 39 | 1-2 |
| 41 | 18-22 |
| 42 | 14-18 |
| 45 | 8-17 |
| 46 | 24-25 |
| 47 | 1-12 |
| 48 | 9-15, 18-25 |
| 49 | 5-8 |
| 50 | 14-16 |
| 51 | 3-9, 12-20 |
| 52 | 15-24 |
| 53 | 15-22 |

Plaintiff objects to the re-reading/playing of the Lusardi deposition. Plaintiff will play the entire deposition on his direct case. Plaintiff objects to all duplicative designations to those plaintiff will read to the jury.

| Witness: Robert Roosevelt Deposition Page/Line Designations | |
|------|-----------|
| PAGE | LINE NOS. |
| 4 | 14-24 |
| 7 | 15-19 |
| 8 | 6-9 |
| 9 | 12-24 |
| 10 | 8-10, 16-25 |
| 11 | 2-5, 20-25 |
| 13 | 17-20, 25 |
| 14 | 2-20 |
| 16 | 18-24 |
| 17 | 11-17, 20-22 |
| 18 | 20-25 |

| | |
|---|---|
| 19 | 2-3 |
| 22 | 6-14 |
| 27 | 17-25 |
| 28 | 2 |

Plaintiff objects to all questions designated by defendant from page 18-28, which all deal with the so-called 'root cause analysis'. Plaintiff objects because it is based on hearsay, a letter from someone named Michael Walters, thus, its foundation is inaccurate. It is based upon an alleged conversation with Capt. Comiskey, which Comiskey denies occurred.  Its foundation is inaccurate and unreliable in that Roosevelt never spoke to the injured party Mr. Hicks to find out what occurred. It is objectionable in that he is a corporate witness and his testimony is hearsay. Further, the testimony is from a discovery deposition in which cross-examination was not held, since it was pure fact-finding at the time.

| Witness:  Glen Scroggins Deposition Page/Line Designations | |
|---|---|
| PAGE | LINE NOS. |
| 6 | 8-18 |
| 7 | 24-25 |
| 8 | 2-3, 15-23 |
| 9 | 15-18, 24-25 |
| 10 | 2-3, 8-15 |
| 11 | 21-25 |
| 12 | 1-2, 9-25 |
| 13 | 2-7, 19-25 |
| 14 | 2-13, 20-25 |
| 15 | 2-15, 19-24 |
| 16 | 22-25 |
| 17 | 2-13, 17-18, 21-25 |
| 18 | 2 |
| 19 | 5-19 |
| 21 | 15-24 |
| 26 | 17-25 |
| 27 | 2-5 |
| 33 | 6-17, 21-23 |
| 37 | 3-9, 12-14, 24-25 |
| 38 | 2, 8-9 |
| 42 | 11-20 |
| 43 | 4-7 |
| 47 | 10-16 |
| 48 | 21-24 |
| 49 | 2-8, 12-18 |
| 51 | 19-25 |
| 52 | 2-5, 19-22 |

| 55 | 16-21 |
|----|-------|

Plaintiff objects to all duplicative designations to those plaintiff will read to the jury.

| Witness:  Bruce Comiskey<br>Deposition Page/Line Designations ||
|:---:|:---|
| **PAGE** | **LINE NOS.** |
| 7 | 5-7 |
| 9 | 11-25 |
| 10 | 2-18 |
| 11 | 5-14, 17-25 |
| 12 | 2, 6-8, 11-21 |
| 13 | 15-18, 20-22 |
| 14 | 2-8, 12-15, 19-25 |
| 15 | 2, 17-22 |
| 16 | 4-11 |
| 17 | 21-24 |
| 18 | 6-10 |
| 20 | 8-23 |
| 21 | 18-21 |
| 23 | 11-17, 22-25 |
| 24 | 2-4 |
| 29 | 15-25 |
| 30 | 2 |
| 31 | 16-25 |
| 32 | 2, 22-25 |
| 33 | 2-5 |
| 35 | 18-25 |
| 36 | 2-13 |
| 40 | 4-13 |
| 42 | 11-25 |
| 43 | 2-3 |
| 54 | 5-16 |
| 57 | 9-16, 22-25 |
| 58 | 2-3, 11-17 |
| 62 | 5-9, 15-18 |
| 72 | 2-8 |
| 75 | 9-11, 14-17 |
| 78 | 25 |
| 79 | 2-7 |
| 90 | 5-15 |

Plaintiff objects to all duplicative designations to those plaintiff will read to the jury.
To the extent that defendant reads Comiskey's deposition transcript, then the additional

designations listed above must also be read.

Final PTO final draft.DOC

| Witness:  Mark Andrew Johnson<br>Deposition Page/Line Designations ||
|---|---|
| **PAGE** | **LINE NOS.** |
| 4 | 17-25 |
| 5 | 2-4, 11-18, 22-24 |
| 6 | 4-9, 16-18 |
| 7 | 8-16 |
| 8 | 23-25 |
| 9 | 5-11, 18-25 |
| 10 | 2-6, 19-25 |
| 12 | 13-20 |
| 13 | 23-25 |
| 14 | 2-13 |
| 15 | 19-25 |
| 16 | 2-6 |
| 18 | 15-20 |
| 22 | 17-20, 24-25 |
| 23 | 2-4, 12-15 |
| 24 | 2-5, 15-25 |
| 25 | 2-15, 24-25 |
| 26 | 2-13, 17-20 |
| 32 | 3-12 |
| 42 | 6-15 |
| 46 | 19-25 |
| 47 | 2-4 |

Plaintiff objects to all duplicative designations to those plaintiff will read to the jury.


IX.    LIST OF EXHIBITS

A.    FOR PLAINTIFF

|  | Objection to<br>Admissibility | Objection to<br>Authenticity |
|---|---|---|
| 1.    Photo of Tug Patriot (Johnson ex. 2) | | |
| 2.    Photo of Tug Patriot | | |
| 3.    Photo of Tug Patriot | | |

| | | | |
|---|---|---|---|
| 4. | Photo of example of Texas bar with donut and wire (Johnson ex. 4) | X | |
| 5. | Photo of donut on Texas bar with safety chain (Johnson 3) | X | |
| 6. | PATRIOT Deck Log, 1/1/09 - 4/22/09 | | |
| 7. | Navigation Charts #12221 and 12248, Norfolk, Hampton Roads, James River area | | |
| 8. | Vane Line Boarding/Separation Agreement (Johnson ex 1) | | |
| 9. | Vane Accident report completed by Mr. Hicks (Johnson ex. 5) | | |
| 10. | Email report of incident by B. Comiskey (Comiskey 3) | | |
| 11. | Email report of incident by safety dept., 4-23-09 (Comiskey 2) | | |
| 12. | Plaintiff's typed statement, 6-28-09 | | |
| 13. | Vane Safety Manual - Topic: Shoulder Injury Prevention | | |
| 14. | Medical Records of Dr. David Hypolite, including reports to Vane via Concentra | | |
| 15. | Medical Records of Concentra Medical Center, pre-sign on and Coast Guard physicals | | |
| 16. | Medical Records of Orthopedic Sports Medicine & Rehabilitation with billing statement (Drs. Lisser, Murphy and Friedel with included Physical Therapy records, Rizzo ex. 3) | | |
| 17. | Medical file of Atlantic Diagnostics, LLC related to and including reports of Arthrogram and MR Arthrogram 5/21/09 (Rizzo ex. 4) | | |
| 18. | Films from MR Arthrogram of 5/21/09 (Ex. 8, Dr. Rizzo depo.) | | |
| 19. | Film plate from MR Arthrogram 5/21/09 (Rizzo ex. 8A) | | |

| | | |
|---|---|---|
| 20. | Hospital/Surgery Records 7/1/09, Riverside Medical Center (Rizzo ex. 3) | |
| 21. | Hospital Records, Riverside Medical Center, 10/25 to 11/5/10 (Rizzo ex. 5) | |
| 22. | Medical Records of Middletown Medical Imaging, MRI 10/22/10 of Right Shoulder (Rizzo ex. 7) | |
| 23. | Films of Middletown Medical Imaging, MRI 10/22/10 of Right Shoulder (Rizzo ex. 9) | |
| 24. | Film plate from Middletown Medical Imaging, MRI 10/22/10 of Right Shoulder (Rizzo ex. 9A) | |
| 25. | Dr. Charles Rizzo C.V. (Rizzo ex. 1) | |
| 26. | Reports of Dr. Charles Rizzo, 8/13/10, 11/2/10 and 2/22/11 (Rizzo ex. 6) | |
| 27. | Email, 11/18/08 from Captain Dennis Kozu to Rhonda Shaffer re: Hicks employment status | |
| 28. | Email, 11/24/08 from Captain Dennis Kozu to Rhonda Shaffer re: Hicks employment status | |
| 29. | Charles Hicks's pay stubs (4) | |
| 30. | Charles Hicks W-2 for 2009 ($28,175 earnings) | |
| 31. | Employee Benefits Election Form, signed by employer 10/1/08 (letterhead of Kelly & Associates) | |
| 32. | Personnel file "Enrollment Form" showing some Fringe Benefit Contributions,11/1/08 | |
| 33. | Letter from Muriel Madden, July 24, 2009, terminating Hicks's employment | |
| 34. | William Neubrand letter, May 18, 2009 explaining maintenance, cure and advances to be paid on account of injury | |
| 35. | Hospital Bill from Riverside Hospital for Admissions of 7/1/09 ($23,172) and | |

| | | |
|---|---|---|
| Emergency Room,7/2/09 ($4850) | | |
| 36. Letter October 6, 2009 from Hofmann & Associates to Vane Line Bunkering enclosing Riverview Hospital bills | | |
| 37. Fax response of October 9, 2009 from William Neubrand, written upon Hofmann & Associates prior letter of October 6, indicating that the surgery bills from Riverview Hospital had been paid | | |
| 38. Dr. Lisser's Billing Records ($79,048), 6/25/09 - 6/28/10 | | |
| 39. Faxed letter dated April 26, 2010 from Hofmann & Associates to Hill Betts & Nash enclosing 'cure' request by Dr. Lisser of a follow up MRI | | |
| 40. Faxed letter of May 11, 2010 from Hofmann & Associates to Hill Betts & Nash advising of certain problems with maintenance and cure payments | | |
| 41. May 13, 2010 letter from Vane Brothers to Mr. Hicks, with copy to Hofmann & Associates, advising that maintenance and cure was terminated | | |
| 42. Letter dated June 29, 2010 from Hofmann & Associates to Steven Lisser, M.D. requesting reconsideration of the termination of treatment by Dr. Lisser of Mr. Hicks | | |
| 43. Letter of October 27, 2010 from Hofmann & Schweitzer to Hill Betts forwarding MRI report from 10/22/10 of Middletown Medical Imaging showing ongoing pathology in Mr. Hick's shoulder | | |
| 44. Letter of November 4, 2010 from Hofmann & Schweitzer to Hill Betts enclosing supplemental report dated 11/2/10 from Dr. Rizzo | | |
| 45. Faxed letter dated November 11, 2010 from Hofmann & Schweitzer to Hill Betts requesting reinstatement of | | |

| | | |
|---|---|---|
| maintenance and cure | | |
| 46. | Letter dated December 7, 2010 forwarding report of Dr. Steven Friedel regarding Mr. Hicks's shoulder injuries. | | |
| 47. | Receipt for MRI from Middletown Medical Imaging, $600, 10/22/10 | | |
| 48. | Bill for Hospitalization at Riverview Hospital from 10/25/10 to 11/5/10 for pericarditis, $126,256. | | |
| 49. | Letter dated January 5, 2011 from Hofmann & Schweitzer enclosing Riverview Hospital records of 10/25/10 - 11/5/10 and bill for $126,256 | | |
| 50. | Letter dated January 6, 2011 from Hofmann & Schweitzer enclosing bill for $126,256 for the Riverview Hospitalization of 10/25/10 - 11/5/10. | | |
| 51. | Vane Brothers "Post Offer" Test - Physical requirements form for Mr. Hicks, 8/12/08 | | |
| 52. | Surveillance video - April 2010 | | |
| 53. | Bill by Dr. Rizzo for Deposition | | |
| 54. | Audio recording of interview of Mr. Hicks | | |

B.      FOR DEFENDANT

| | | Objection to Admissibility | Objection to Authenticity |
|---|---|---|---|
| 1. | Deposition Exhibits of Charles Hicks | | |
| 2. | Deposition Exhibits of the deposition of Andrew Mark Johnson, except Exhs. 3 and 4 | | |
| 3. | Deposition Exhibits of Bruce Comiskey | **Comiskey ex 1 – root cause analysis; objection on hearsay, foundation and** | |

| | | |
|---|---|---|
| | relevance, best evidence rule | |
| 4. | Deposition Exhibits of Glen Scroggins | | |
| 5. | Deposition Exhibits of Robert Roosevelt | **Comiskey ex 1 referenced in Roosevelt depo. See objection above.** | |
| 6. | 2007 Standard Diary (PATRIOT 2007 Daily Journal | | |
| 7. | 10/1/2006 – 6/1/07 Safety Meeting Minutes | | |
| 8. | Vane Line Company Op's Manual | | |
| 9. | Vane Line Bunkering, Safe Working Practices Manual | | |
| 10. | Safety Notices | | |
| 11. | 2009 Daily Journal (Wheelhouse – PATRIOT Captain's Log) | | |
| 12. | Safety Meeting Minutes 10/1/08 through 6/1/09 | | |
| 13. | Crew Engagement Report 1/1/09-6/1/09 (Boarding & Separation Agreement) | | |
| 14. | Vane Line Company Op' includes pages 1-86F, 121-142, Appendices B, C, D, E, F, H, J (Master/Mate, Etc. Evaluation Form only), O | | |
| 15. | Vessel Incident Report | | |
| 16. | 4/8/09-4/22/09 Boarding and Separation Agreement | | |
| 17. | 4/23/09 E-mail from Capt. Comiskey to Ed Fitchett | | |
| 18. | 4/23/09 E-mail from Safety Incidents to Various w/incident report | | |
| 19. | 5/18/09 – Ltr from Walters Nixon to Vane Brothers | **Hearsay, best evidence rule** | |
| 20. | ISO Claimsearch Match Report | | |

| | | |
|---|---|---|
| 21. | 6/2009 Root Cause Analysis Worksheet | **Hearsay, relevance, best evidence rule, foundation** | |
| 22. | 5/18/09 – Ltr from Vane to Ciro Hicks re: Wages | | |
| 23. | Earnings Statement | | |
| 24. | Orthopaedic Sports Medicine and Rehab Center Records | | |
| 25. | Riverview Medical Center | | |
| 26. | Vane Line 6/10/09 Not Fit for Duty | | |
| 27. | Atlantic Diagnostics Medical records | | |
| 28. | Mutual of Omaha Claim approval ltr 10/16/09 | | |
| 29. | Advance Wage Chart | | |
| 30. | 7/21/09 Ltr from Hofmann to Vane re: representation | | |
| 31. | Long Term Disability Claim Form | | |
| 32. | Vane Line Job Analyses | | |
| 33. | Hicks Earnings Statements | | |
| 34. | Ltr from Vane re: termination of employment | | |
| 35. | Mutual of Omaha Short Term Disability denied | **Relevance** | |
| 36. | Fleet Salary Status Change Form | | |
| 37. | Video surveillance of Charles Hicks | | |
| 38. | 10/22/10 Middletown Medical Imaging MRI Report | | |
| 39. | Audio tape of Mr. Hicks' statement | | |

40  Three photographs of Tug

Dated: New York, New York
      June 8, 2012

HOFMANN & SCHWEITZER

By:                       
     Paul T. Hofmann, Esq.
     Attorneys for Plaintiff
     360 W. 31st Street, Suite 1506
     New York, N.Y. 10001
     Tel: (212) 465-8840
     paulhofmann@hofmannlawfirm.com

HILL BETTS & NASH

By:                       
     James E. Forde, Esq.
     One World Financial Center
     200 Liberty Street, 26th Floor
     New York, New York 10281
     (212) 839-7000
     Fax (212) 466-0514
     jforde@hillbetts.com

Final PTO final draft DOC